***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Baddour. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Baddour with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The N.C. Guaranty Association, successor to Reliance Insurance Co., is the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. On January 4, 2000, plaintiff sustained an injury by accident arising out of and in the course of her employment.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On January 4, 2000, plaintiff, a registered nurse, was employed as the Employee Health and Infection Control Coordinator at Betsy Johnson Memorial Hospital ("Hospital") when she was involved in a physical altercation with a co-worker, Clay Potter. Mr. Potter forcibly pushed plaintiff as she stood up from her chair. After the incident, Mr. Potter's employment was terminated.
2. At the time of the incident, plaintiff had been employed in the non-clinical role of Employee Health and Infection Control Coordinator for approximately nine years. Plaintiff's prior work history includes one year as a Clinical Instructor, two years as an Operating Room Manager and eight years as an Operating Room Scrub Nurse. Plaintiff had not been employed in a direct patient care capacity for approximately thirteen years.
3. Three days after the incident, plaintiff was seen at Betsy Johnson Memorial Hospital for complaints of right neck pain and headaches. Plaintiff was assessed with a muscular strain, hypertension and a tension headache.
4. On January 11, 2000, plaintiff sought treatment with Dr. Linda Robinson, her family physician, and reported a headache. Dr. Robinson found that plaintiff had hypertension and a neck strain.
5. On February 3, 2000, plaintiff presented to Dr. Robinson with new symptoms of right facial weakness and right eyelid dipping.
6. From February 3, 2000 through April 11, 2000, plaintiff was seen by Dr. Robinson on four occasions. For six months, from April to October 2000, plaintiff did not seek treatment for any of the aforementioned conditions.
7. On October 19, 2000, plaintiff was seen on referral from Dr. Robinson by Dr. Pamela Whitney, a neurologist. After reviewing plaintiff's records and performing an examination, Dr. Whitney believed that plaintiff's headaches originated in her right occipital nerve and diagnosed her with occipital neuralgia.
8. Dr. Whitney testified that occipital neuralgia could be trauma-related if a person hits the back of his or her head. Dr. Whitney further testified that plaintiff's occipital neuralgia was not a "major neurologic problem," but was just "bothersome." Dr. Whitney did not place any work restrictions on plaintiff, and testified that she assumed plaintiff was working during her treatment. Dr. Whitney further testified she would assign weight lifting restrictions for occipital neuralgia if the patient "did real physical work, where they're constantly staining the neck muscles or something . . . to try and protect the neck."
9. Dr. Whitney believed that plaintiff's right facial weakness and right eyelid dipping were the result of a Bell's palsy. Dr. Whitney testified that Bell's palsy is not traumatic in origin and that its cause is unknown.
10. On October 25, 2000, plaintiff received a performance appraisal that did not please her. Plaintiff's performance appraisal was worse than any of her prior evaluations and it was indicated that she did not meet performance standards in several categories. When afforded an opportunity to make comments about her evaluation, plaintiff noted she felt additional duties affected her job performance, but did not mention any physical problems as an explanation for her poor performance.
11. Plaintiff was subsequently referred to Rex Pain Management Center where she treated with Dr. Robert C. Jacobson. Plaintiff received right stellate ganglion blocks for her facial pain and right occipital nerve blocks for her headaches.
12. On December 26, 2000, plaintiff wrote an e-mail to Donna Wimberly, Vice President of Clinical Services, requesting that she be excused from work from January 8 through January 12, 2001 because she was to be out of state. Plaintiff testified at the hearing that she needed this time off to go to California with her grandchild for a talent audition. Ms. Wimberly sent an e-mail in response to plaintiff's request on December 28, 2000 informing plaintiff that she did not have enough PDO (vacation) time to cover the request and also reminded plaintiff that she still had to complete work on a project that was due towards the end of January. Nevertheless, Ms. Wimberly reluctantly approved plaintiff's request for time off.
13. A couple of days later, Dr. Robinson completed a leave of absence form allowing plaintiff to stay out of work indefinitely until her headaches resolved. Plaintiff testified that she returned to California for a second time in late January or early February of 2001 prior to her termination. Plaintiff also said that she had a pre-arranged trip to return to California between March 2001 and June 2001. Plaintiff acknowledged that she did not have enough vacation time to take her trips to California and testified that she did not know how she would have arranged to have all that time off of work had Dr. Robinson not completed the leave of absence form.
14. On February 9, 2001, plaintiff was terminated for poor work performance unrelated to her compensable injury, for which a non-disabled employee would ordinarily have been terminated by employer-defendant.
15. Based upon the greater weight of the competent medical evidence of record, the undersigned find that plaintiff's headaches, diagnosed as occipital neuralgia, and neck pain are causally related to her accident at work on January 4, 2000.
16. Plaintiff has failed to establish by the greater weight of the competent evidence of record that her other medical conditions are causally related to her accident at work on January 4, 2000.
17. Based upon the greater weight of the competent evidence of record, the undersigned find that plaintiff was temporarily totally disabled due to her compensable injury on any days that she missed work prior to her termination, due in whole or in part to her headaches or neck pain. Plaintiff is entitled to compensation for the following days missed from work: January 11, 12, 18-21, 24-28 31, February 1, 3-5, 16, 17, 23 
24, April 3 17, November 29-30 and December 11, 2000.
18. The undersigned finds that following her termination, plaintiff has failed to show that she is totally disabled. Based upon the greater weight of the competent evidence of record, plaintiff is capable of performing sedentary work based upon her education as a registered nurse and her work experience. Sedentary work is consistent with plaintiff's most recent work history. Bernard Moore, vocational counselor, identified several non-patient care (sedentary) jobs currently available in the local area. Plaintiff testified that she has not worked since January 2, 2001 and has not attempted to find work. Plaintiff has failed to show that she has conducted a reasonable job search to find suitable employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of her employment on January 4, 2000. N.C. Gen. Stat. § 97-2(6).
2. As a result of her compensable injury, plaintiff is entitled to total disability compensation for any days that she missed work prior to her termination due, in whole or in part, to her headaches or neck pain. Plaintiff has failed to show that she has been totally disabled following her termination on February 9, 2001. N.C. Gen. Stat. § 97-29. Russell v.Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
3. Plaintiff was terminated for poor work performance, unrelated to her compensable injury, for which a non-disabled employee would ordinarily have been terminated by employer-defendant. Seagraves v. Austin Co. ofGreensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996).
4. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of her headache and neck pain conditions as may reasonably be required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
5. Defendants may be entitled to a credit for plaintiff's third party recovery pursuant to N.C. Gen. Stat. § 97-10.2(j).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay total disability compensation for January 11, 12, 18-21, 24-28 31, February 1, 3-5, 16, 17, 23 24, April 3 17, November 29-30 and December 11, 2000, days that plaintiff missed work prior to her termination due in whole or in part, to her headaches or neck pain. Because this compensation has accrued, it shall be paid in a lump sum. Plaintiff is not entitled to total disability compensation following her termination on February 9, 2001.
2. Defendants shall pay for medical expenses incurred or to be incurred as a result of plaintiff's headache and neck pain conditions as may reasonably be required to effect a cure, provide relief, or lessen the period of disability.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
4. Defendants shall pay the costs due the Commission.
This the 31st day of January, 2005.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER